[No. 11016.   Department Two.   July 24, 1913.]

MORRISON MILL COMPANY, *Respondent*, v. AMERICAN
MERCANTILE COMPANY, *Appellant*.[1]

BROKERS—CONTRACTS—COMMISSIONS—EVIDENCE—SUFFICIENCY. The
evidence fails to establish a contract to pay a broker's commissions
on the sale of box shooks, where the broker could not show any
specific agreement with the seller for the payment of commissions,
nor any course of dealing from which a promise to pay could be
clearly implied, the writings clearly negatived any such idea, and
the contract rested entirely in a telephone conversation which was
either disputed or misunderstood.

Appeal from a judgment of the superior court for Pierce
county, Easterday, J., entered February 6, 1912, upon find-
ings in favor of the plaintiff, in an action on contract, tried
to the court.   Affirmed.

*Shepard & Burkheimer* and *Fletcher & Evans*, for appel-
lant.

*Hadley, Hadley & Abbott* and *Grosscup & Morrow*, for re-
spondent.

PER CURIAM—The respondent is engaged in the business of
manufacturing lumber, cross ties, box shooks, and other tim-
ber products, one of its principal manufacturing plants be-
ing in the city of Bellingham.   In December of the year 1910,
it sold and delivered to the appellant certain cross ties at the
agreed price, according to the respondent's measurements, of
$400.30..  The appellant failed to pay for the ties at the ex-
piration of the term of credit, and the respondent brought the
present action to recover the purchase price.   The appellant,
answering the complaint, claimed an offset on account of cer-
tain defective ties, but admitted an indebtedness on account
thereof in the sum of $360.   It also set up a counterclaim for
certain brokerage commissions.   It alleged that its principal

[1]Reported in 133 Pac. 1033.

business was that of a broker buying and selling goods and supplies on commission; that it found a customer desirous of purchasing a large quantity of hemlock box shooks out of which to make oil cases or coverings, and that he communicated the fact to one Goff, who was doing a brokerage business at Seattle, Washington, under the name of Washington-Canadian Lumber Company, and requested him to find a manufacturer who would furnish the shooks on such terms as would allow a brokerage commission, which commission it agreed to divide with Goff; that Goff opened negotiations with the respondent to supply the shooks which resulted in an agreement between the respondent and Goff by which the respondent agreed to quote such prices to the appellant's customer as would enable it to pay a commission to Goff of one-half cent per case for all shooks it should be able to sell such customer; that Goff thereupon advised the respondent of the name of the customer, and the respondent thereupon entered into a contract with such customer for the sale of, and did sell to such customer, a large number of shooks for oil cases, on which commissions were due the appellant—the precise amount it was unable to state. An accounting was asked, and judgment prayed for such sum as might be found due upon the accounting. In reply the respondent conceded the offset claimed on account of the defective ties, but denied all of the allegations concerning the claim for commission. A trial was had on the issues made by the answer and reply, before the court sitting without a jury, and resulted in a judgment in favor of the respondent for the sum conceded to be due for the cross ties, and denying recovery on the claim for commission. This appeal followed.

The controversy in this court, as it was in the court below, is over the claim for commissions. The evidence is somewhat voluminous, and it would serve no useful purpose to detail it at length here. Outlined, the evidence tended to show that the Asiatic Petroleum Company, whose purchasing agent resided at Tacoma, desired to purchase a large quantity of

hemlock shooks out of which to make cases or containers for casing cans of petroleum oil which it sold to its Asiatic trade. One Dorr, the secretary of the appellant, learned of this fact, and called on the agent of the oil company, and asked if he as such agent was willing to receive offers for box shooks, saying he could do better than could the agent in making purchases. The agent replied that he would receive such offers, whereupon Dorr, communicated with the Mr. Goff, mentioned in the answer, and requested him to find a manufacturer who would furnish the shooks on such terms as would allow a broker's commission on such sales as might be made to the oil company, agreeing to divide any commission that could be thus obtained equally with Goff. Goff, corresponding under his trade-name of Washington-Canadian Lumber Company, requested quotations from the respondent for shooks delivered at Seattle suitable for the purpose desired. After some correspondence looking to further details, the respondent quoted him a price of ten and one-half cents per case. Goff demurred to this as being too high, saying it would "take a price of nine cents less two and one-half per cent," to handle the matter. Some further negotiations were had, when the respondent offered him a price of nine cents per case net to it at its mill in Bellingham. In none of the correspondence up to this time did Goff disclose his interest in the transaction, or the fact that he was acting for another. He used, as we say, his trade-name and led the respondent to believe that his purported company was the person desiring the shooks. While Goff was endeavoring to get quotations from the respondent, the purchasing agent of the oil company was pressing Dorr for a quotation on shooks, and was quoted a price of nine and one-half cents per case, delivered at the respondent's mill in Bellingham. He demanded a confirmatory report from the mill company itself as to the price, which led Dorr to request Goff to procure such a report. Goff agreed to get such a report and inquired of Dorr for information as to whom the letter should

be addressed.  Dorr answered giving the purchasing agent's name and address, accompanying his answer with a caution to the effect that "it would greatly assist in this business if the buyer can go direct to the supplier, and you to provide for your own and our commission by separate agreement, and then the buyer will not know that any commission is being paid, and will be better satisfied."

Goff then again took up the question of prices with the respondent, inquiring if it could not "furnish hemlock shooks at eight and one quarter cents f. o. b. cars at Bellingham." This telegram the appellant answered by letter, saying that they would not take less than nine cents net at their mill. On the next day Goff learned that the prospective buyer was intending to visit the mill company, and thereupon wired them of that fact, and made a request that the respondent quote him a price that "will allow us a commission of two and one half per cent."

On the next day, Goff called the respondent on the telephone, and made a similar request orally.  What answer the manager of the respondent made is a subject of dispute between the parties.  Goff testifies that in this conversation the manager agreed to quote such prices to the intended purchaser's agent as would allow him (Goff) a commission of one-half cent per case on all shooks sold such purchaser.  The manager of the mill company directly contradicts these statements.  He testified that he positively refused to allow commissions; that he told Goff that it was not their custom to deal through brokers; that their prices were net to them at the mill, and any commission he received must be from the purchaser; testifying further that the telegram of the day before was the first time that the respondent had any information that Goff, or rather the Washington-Canadian Lumber Company in which name the correspondence was carried on, was a broker and not a prospective purchaser.  The next day (November 3, 1910) letters passed between the parties pur-

porting to be confirmatory of their respective versions of the telephone conversation.

The order of the succeeding events are not made very clear in the record; but on the same day the purchaser's agent wrote Goff, addressing him as the Washington-Canadian Lumber Company, saying, among other things, that,

"Mr. Joseph K. Dorr has had the question up with me for the last 14 days to supply him with box shooks of hemlock and spruce and especially hemlock from Morrison mill in Bellingham. I have been after him every day since to get a letter so I have it in black and white what you have got to offer. I was therefore kind of surprised this morning to receive your letter of yesterday in which you quoted him white pine to the extent of 30,000 cases at $13.25, without quoting him for hemlock. I have agreed with Mr. Dorr that I should telephone long distance to Morrison Mill Company and mention your name. I have got quotations from them and I shall go there tomorrow. As I understand you are the broker in this case I think it would be advisable for you when you receive this letter to telephone them, or write them that you have been the broker in this case, as it is not my intention to beat you out of any brokerage, but the business I do must be done so everything is clear."

On his way to Bellingham, the agent called on Goff personally, and in the course of his conversation with him told him that he had quotations from the respondent offering the shooks at nine cents a case. He testified that Goff told him this was a mistake; that the price was nine and one-half cents, and that he was the agent for the Morrison Mill Company. After he had started on his way, Goff again wired the respondent the following:

"Seattle, Wash., Nov. 3rd, 1910.
"Morrison Mill Co., Bellingham, Wash.

"Mr. Blaauw states he is afraid there may be some misunderstanding in reference to the price as you stated to him over telephone this morning something about a nine cent price. He wants a nine and one-half cent price quoted him on cars Bellingham and understood either he or us will be credited with one-half cent per case commission leaving you nine

cents net.    He will await his departure for Bellingham until
you confirm this.    As regards delivery etc. he will take chance
on coming up to make satisfactory arrangements.    In wiring
reply might be well to state how many could ship this month
and next provided you took contract.

"Washington-Canadian Lumber Co."

In answer to this, the respondent replied: "No misunder-
standing about price.    Can furnish twenty thousand this
month and more next."

The agent reached Bellingham on the same evening, and on
the next day entered into a trial order for a limited number
of shooks of a better grade than those contemplated at the
nine cent offer, and for an increased price.    Subsequently the
order was renewed, and a large quantity of shooks sold the
purchaser.

On November 9, 1910, Goff by letter notified the respond-
ent that he would hold it for commission at one half cent per
case for all shooks sold the Asiatic Petroleum Company.    The
respondent answered immediately on the receipt of the letter
denying its liability for commissions.

It seems to us that there is nothing in the evidence that
justifies a recovery on the part of the appellant of the commis-
sions claimed.    Before a broker can recover a commission
from a seller on account of a sale of any property or com-
modity, he must have a specific agreement with the seller for
the payment of such commission, or the course of dealing must
have been such as will clearly imply a promise to pay com-
missions.    Here there is clearly no promise made in writing
to pay a commission.    Indeed, the writings—and the greater
part of the negotiations between the parties were had by
writings—clearly negative any such idea.    The promise must
rest in the telephone conversation, but the conduct of the re-
spondent with regard to the transaction, both prior and sub-
sequent to that time, plainly indicates that it did not so under-
stand the conversation, though we may believe that the other
party to the conversation so understood it.    If both are

truthful, there was no meeting of minds upon the proposition, and hence no contract. If one is falsifying, it is better that we adopt the conclusion the trial court reached from the evidence, since the truth rests entirely on the veracity of the witnesses who testified orally before that tribunal, than substitute our own judgment gathered from the printed record.

The judgment is affirmed.